IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-02328-WYD-KLM

WELLMAN GIBSON,

     Plaintiff,

v.

SGT. VERENA PACHECO,

     Defendant.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

     This matter is before the Court on Defendant Pacheco's **Motion for Summary Judgment** [Docket No. 173; Filed Sept. 30, 2011] (the "Motion").  Plaintiff, who is proceeding *pro se*, filed a Response [#184] in opposition to the Motion on November 10, 2011.  Defendant Pacheco filed a Reply [#189] on November 25, 2011. Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C.COLO.LCivR 72.1C.3., the Motion has been referred to this Court for a recommendation regarding disposition.  The Court has reviewed the Motion, Plaintiff's Response, Defendant Pacheco's Reply, the entire case file, and the applicable law and is sufficiently advised in the premises.  For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion be **GRANTED in part and DENIED in part.**

## I. Summary of the Case

Plaintiff is an inmate at the Colorado Department of Corrections ("CDOC") and was incarcerated at the Arkansas Valley Correctional Facility ("AVCF") at all times relevant to his claims. *Motion* [#173] at 1. Pursuant to 42 U.S.C. § 1983, Plaintiff filed an amended complaint (the "Complaint") on November 5, 2009, asserting four claims for relief against Defendant Pacheco.[1] *See id.*; *Compl.* [#29] at 6. Plaintiff's claims originated with the revocation of his Kosher meal privileges at AVCF. *See Compl.* [#29] at 6. During the time relevant to this case, Defendant Pacheco worked in the food service unit of AVCF. See *Ex. A-1, Aff. of Ben* [#173-1] at 12 (Ex. 3 to Ex. A-1, Incident # 310729 AVCF, dated Aug. 28, 2009). She drafted the incident report that resulted in Plaintiff losing his Kosher meal privileges. *Id.* In the Complaint, Plaintiff asserts that the termination of his Kosher diet infringed upon his ability to practice his religion while incarcerated, in violation of the Free Exercise Clause of the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc to 2000cc-5. *See Compl.* [#29] at 3, 6; *Motion* [#173] at 2. Additionally, Plaintiff alleges that he was denied notice and the opportunity for a hearing prior to the termination of his Kosher meal privileges in violation of the Due Process Clause of the Fourteenth Amendment. *See Compl.* [#29] at 6; *Motion* [#173] at 2. Plaintiff further alleges that the AVCF staff specifically targeted inmates receiving a Kosher diet in violation of the Equal Protection Clause of the Fourteenth Amendment. *See Compl.* [#29] at 6; *Motion* [#173] at 2.

---

[1] All other Defendants originally sued in this matter have been dismissed. *See Order Affirming and Adopting Recommendation of United States Magistrate Judge* [#112] at 1-2.

## II. Statement of Undisputed Facts

Defendant Pacheco's Statement of Material Facts remains, for the most part, undisputed by Plaintiff.[2] *See Response* [#184] at 1-4. Accordingly, the Court largely adopts the Statement of Material Facts as presented by Defendant Pacheco.

Plaintiff began participating in the religious diet program at AVCF in June 2006. *Ex. A-1, Aff. of Ben* [#173-1] at 4. Several types of religious diets were available through the program, including a Kosher diet, the Halal diet, and a vegetarian or vegan diet. *Id.* at 2. Any inmate wishing to receive a religious diet was required to comply with CDOC's regulations governing these diets. *Id.* at 1-2. Under these regulations, the inmate was required to submit a Request for a Religious Diet form, and sign a Religious Diet Participation Agreement (the "Agreement"). *Id.* at 2. In June 2006, Plaintiff completed the requirements to participate in the Kosher diet program, and began receiving Kosher meals. *Id.* at 4.

In order to continue receiving a religious diet, inmates were required to comply with the terms listed in the Agreement. *Id.* at 2. This requirement applied to all inmates participating in the program, regardless of the type of religious diet that they received. *Id.* CDOC's "two strikes" policy applied when the inmate violated the terms of the Agreement. *Id.* at 3. After the first violation, or first "strike," the inmate receive a written warning, but could continue to participate in the program. *Id.* If the inmate violated the terms of the

---

[2] Although Plaintiff has not filed an affidavit, a Complaint may be treated as an affidavit pursuant to Fed.R.Civ.P. 56(e) to the extent it contains statements that are based upon personal knowledge and that have been sworn under penalty of perjury. *C.D. Mosier v. Maynard*, 937 F.2d 1521, 1524 (10th Cir.1991). Plaintiff's Complaint is sworn under the penalty of perjury. *See Compl.* [#29] at 8. Therefore, the Court has relied on the factual assertions in the Complaint to the extent that they are based upon personal knowledge.

Agreement a second time within a year of the first violation, the inmate was removed from the religious diet program. *Id.* However, the inmate could reapply one year after his second "strike," and could be reinstated. *Id.* Plaintiff's Kosher diet was terminated on September 3, 2009, pursuant to the "two strikes" policy. *Id.* at 5.

The terms of the Agreement relevant to the termination of Plaintiff's Kosher diet provide that: "(C) During meals I will eat and possess on my food tray only those food items served as part of the Religious Diet Program;" "(D) I will not purchase, possess, or consume any food items that are not permitted under my religious diet. I understand that my Canteen purchases will be routinely monitored;" and "(E) I will not eat foods from the general diet that are not served to me as part of my religious diet." *Id.* at 2, 7 (Ex. 1 to Ex. A-1, CDOC Religious Diet Participation Agreement, dated Jun. 18, 2006).

Plaintiff's first violation under the "two strikes" policy occurred on September 23, 2008, when a CDOC Correctional Officer observed Plaintiff putting food into his shirt while in the facility chow hall.[3] *Id.* at 4. At that time, the Correctional Officer completed a CDOC Religious Diet Non-Compliance Report, which asserted that by putting food into his shirt, Plaintiff violated provisions C, D, and E of the Agreement. *Id.* at 9 (Ex. 2 to Ex. A-1, CDOC Religious Diet Non-Compliance Report, dated Sept. 23, 2008). Plaintiff was provided with a written notice that his Kosher diet would be terminated if he violated the Agreement again within one year. *Id.* at 4-5.

Plaintiff states that during the incident that resulted in his first "strike," "Plaintiff's

---

[3] Defendant Pacheco was not involved in this incident. *See Ex. A-1, Aff. of Ben* [#173-1] at 9 (Ex. 2 to Ex. A-1, CDOC Religious Diet Non-Compliance Report, dated Sept. 23, 2008).

report shows took items served to him on diet tray out of chow hall." [sic] *Response* [#184] at 3. The Religious Diet Non-Compliance Report created at that time states that Plaintiff was seen "putting food into his shirt while eating at chow," and that the "items were wrapped in his diet meal tray." *Ex. A-1, Aff. of Ben* [#173-1] at 9 (Ex. 2 to Ex. A-1, CDOC Religious Diet Non-Compliance Report, dated Sept. 23, 2008). Accordingly, the parties apparently agree that Plaintiff was attempting to remove permissible food items from his Kosher meal tray.

On September 3, 2009, Plaintiff received his second "strike" when a Correctional Officer observed him eating cookies with his Kosher lunch meal. *See id.* at 4-5, 12 (Ex. 3 to Ex. A-1, CDOC Religious Diet Non-Compliance Report, dated Aug. 28, 2009).  The Correctional Officer approached Defendant Pacheco to determine whether the cookies had been served as part of the Kosher meal that day. *Id.* at 12 (Ex. 3 to Ex. A-1, CDOC Religious Diet Non-Compliance Report, dated Aug. 28, 2009). When Defendant Pacheco confirmed that they had not, she drafted the CDOC Religious Diet Non-Compliance Report that resulted in Plaintiff's second "strike." *Id.* at 4-5, 12 (Ex. 3 to Ex. A-1, CDOC Religious Diet Non-Compliance Report, dated Aug. 28, 2009). At that time, Plaintiff's Kosher diet was terminated. *Id.* at 5. Defendant Pacheco contends that Plaintiff's consumption of cookies that were not served as part of the Kosher meal violated provisions C, D, and E of the Agreement. *Id.* at 4-5.

In response to the incident that resulted in the second "strike," Plaintiff states that "by [defendant's] admission plaintiff was eating oatmeal cream pie in chow hall a kosher item." [sic] *Response* [#184] at 3. In support of his assertion that he was eating Kosher food at the time of the second "strike," Plaintiff provided a "canteen sheet" from Sterling

Correctional Facility ("SCF"), a facility at which he was not incarcerated at any time relevant to this lawsuit,  which indicates that oatmeal cream pies are Kosher. *Id.* at 5 (Ex. 1, SCF Canteen Sheet, dated Nov. 20, 2008); *see also Ex. A-1, Aff. of Ben* [#173-1] at 9 (Ex. 2 to Ex. A-1, CDOC Religious Diet Non-Compliance Report, dated Sept. 23, 2008); *Id.* at 12 (Ex. 3 to Ex. A-1, CDOC Religious Diet Non-Compliance Report, dated Aug. 28, 2009).

Although Plaintiff was not permitted to receive the Kosher diet for one year after his second "strike," Plaintiff had the opportunity to reapply for the Kosher diet after that year had elapsed. *Ex. A-1, Aff. of Ben* [#173-1] at 4-5. On September 3, 2010, Plaintiff reapplied by submitting a Request for a Religious Diet form. *Id.* at 5. However, Plaintiff's request was denied, because he refused to sign the Agreement. *Id.* As of September 28, 2011, Plaintiff had not attempted to reapply for the Kosher diet. *Id.*

### III.  Standard of Review

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Under Fed. R. Civ. P. 56(c), summary judgment shall be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 277 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the case under the governing substantive law. *Id.*

The burden is on the movant to show the absence of a genuine issue of material

fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323). When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671. If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor. *See Anderson*, 277 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). The nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to him. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex*, 477 U.S. at 324). Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded. *See* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed.1998).

When considering Plaintiff's Response [#184] and other filings, the Court is mindful that it must construe the filings of a *pro se* litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be a *pro se* litigant's advocate, nor should it "supply additional factual

allegations to round out [a *pro se* litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110).  In addition, *pro se* litigants must follow the same procedural rules that govern other litigants.  *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

## IV. Analysis

### A.  Equal Protection

First, Plaintiff contends that the provisions of the Agreement, including the "two strikes" policy, are used to target only those who receive Kosher diets. *Compl.* [#29] at 6. Plaintiff asserts that this constitutes a violation of equal protection. *See id.* In response, Defendant Pacheco argues that each applicant for the religious diet program must agree to, and abide by, the terms of the Agreement, regardless of the type of diet received. *Motion* [#173] at 16-17.

The Fourteenth Amendment provides that "[n]o State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. An equal protection violation occurs when the government treats someone differently from another person who is similarly situated, without adequate justification for the difference in treatment. *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985); *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence*, 927 F.2d 1111, 1118 (10th Cir. 1991). "Equal protection 'is essentially a direction that all persons similarly situated should be treated alike.'" *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 659 (10th Cir. 2006) (quoting *City of Cleburne,* 473 U.S. at 439). In order to successfully bring an equal protection claim in prison-related litigation, the plaintiff must

allege that his treatment differs from that of similarly-situated inmates. *Trujillo v. Williams*, 465 F.3d 1210, 1228 (10th Cir. 2006).

Furthermore, the plaintiff bears the burden of demonstrating discriminatory intent; he must present specific facts which demonstrate that a discriminatory purpose was a motivating factor in the decision attacked by the complaint. *Watson v. City of Kansas City, Kan.*, 857 F.2d 690, 694 (10th Cir. 1988). "'Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decision maker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979).

Additionally, "individual liability under [42 U.S.C.] § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir.1997) (citing *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir.1996)); *Bennett v. Passic*, 545 F.2d 1260, 1262–63 (10th Cir.1976) ("Personal participation is an essential allegation in a Section 1983 claim." (citations omitted)). A defendant was personally involved in an alleged constitutional violation only if there is an "affirmative link" between his or her conduct and the described violation. *Stidham v. Peace Officer Stds. & Training*, 265 F.3d 1144, 1156 (10th Cir.2001).

Plaintiff contends that Defendant Pacheco denied him equal protection by utilizing the Agreement, including the "two strikes" policy, to target those receiving a Kosher diet, stating that "only Kosher diets were targeted by staff with directive from central office." *Response* [#184] at 3. As evidence in support of this assertion, Plaintiff provides a CDOC memorandum, titled "Recommendations Regarding Kosher Diets." *See id.* at 7 (Ex. 2,

Mem. from Arellano to Wardens, dated Sept. 17, 2002).

This memorandum is addressed to wardens of four correctional centers,[4] from Michael Arellano, Chief of the Private Prisons Monitoring Unit. *Id.* Generally, the memorandum discusses CDOC's religious diet policies and how the "two strikes" rule should be used to ensure the sincerity of the inmates who receive these diets. *See id.* The memorandum begins by explaining that CDOC has a "liberal" religious diet policy that is the product of litigation, RLUIPA, inmate requests, and guidance from the Attorney General. *Id.* It continues by stating that because of the time and effort associated with providing religious meals, CDOC employees should work to ensure that only sincerely religious inmates participate in the program. *Id.* at 7-8. The Agreement and application process are designed to serve as one check against insincere inmates requesting the diets. *Id.* at 8. Additionally, the memorandum urges CDOC employees to enforce the "two strikes" policy by watching inmates while in the dining room. *Id.* Finally, the memorandum explains that Canteen purchases should be reviewed to ensure that inmates are observing the restrictions imposed by their religious diets outside of the main dining area. *Id.*

The Court finds that Plaintiff's equal protection claim against Defendant Pacheco must fail for two reasons. First, Plaintiff has not demonstrated the requisite personal participation in order to sustain a section 1983 claim against Defendant Pacheco. There is no indication that Defendant Pacheco was a party to the memorandum used as evidence to support Plaintiff's equal protection claim. *See id.* at 7. The memorandum is addressed

---

[4] The wardens are Hoyt Brill at Kit Carson, Brent Crouse at Bent County, Steve Hargett at Crowley County, and Bob Kurtz at Huerfano County. *Response* [#184] at 7 (Ex. 2, Mem. from Arellano to Wardens, dated Sept. 17, 2002).

only to four wardens of other correctional facilities, and there is no evidence in the record indicating that anyone else received or read this communication. *See id.* Without this connection, Plaintiff has not demonstrated an affirmative link between the evidence used to support his equal protection claim and Defendant Pacheco's participation, control, or direction.

Second, the memorandum does not demonstrate a discriminatory intent sufficient to support a violation of equal protection. Even if Defendant Pacheco were a party to the memorandum, this document would not support Plaintiff's claim that he was treated differently under the religious diet program because he received a Kosher diet. In short, this memorandum reiterates the policies regarding religious diets, and refers to the "two strikes" policy as a tool to ensure the sincerity of those requesting these special diets. *Response* [#184] at 7 (Ex. 2, Mem. from Arellano to Wardens, dated Sept. 17, 2002). The memorandum specifically references Kosher diets only twice, and does not demonstrate an intent to discriminate against those receiving a Kosher diet under the program.[5] *Id.* Beyond these two references, the memorandum speaks only in general terms about the religious diet program. *See id.* Defendant Pacheco has supplied evidence which demonstrates that AVCF offers other religious diets as well. *Ex. A-1, Aff. of Ben* [#173-1] at 2.

Plaintiff has failed to provide any evidence that he was treated differently from other similarly-situated inmates, or that he was treated differently from any other inmate who

---

[5] The memorandum begins by stating "in review of the most recent communications regarding kosher diets, I found myself as frustrated as all of you probably are," and later states "that if the private facilities send a list of what they have in their canteen, we might be able to check to see what is and isn't Kosher." *Response* [#184] at 8 (Ex. 2, Mem. from Arellano to Wardens, dated Sept. 17, 2002).

received a religious diet. While he also alleges that he did not actually violate the terms of the Agreement, Plaintiff has not demonstrated that he was treated differently from any other inmate in a similar situation. *See Compl.* [#29] at 6. Accordingly, Plaintiff has not satisfied his burden of demonstrating that discriminatory intent was the motivating factor in revoking his Kosher diet, or that he was treated differently from inmates in any similarly-situated class.

On the contrary, Defendant Pacheco has provided ample evidence that all inmates, regardless of the religious diet that they receive, must comply with the terms of the Agreement and are subject to the "two strikes" policy. *See, e.g.*, *Ex. A-1, Aff. of Ben* [#173-1] at 2. In his affidavit, Manuel Ben, the Food Service and Laundry Programs Administrator, asserts that all inmates who wished to receive a religious diet needed to complete the religious diet application, agree to the terms of the Agreement, and follow those terms. *Id.* Additionally, it is clear upon examination of the CDOC "Request for Religious Diet" and "Religious Diet Participation Agreement" forms that all applications for a religious diet are governed by the rules and restrictions in the Agreement, regardless of the type of diet requested. *Id.* at 7 (Ex. 1 to Ex. A-1, CDOC Religious Diet Participation Agreement, dated Jun. 18, 2006); *Id.* at 8 (Ex. 1 to Ex. A-1, CDOC Request for Religious Diet, dated July 27, 2006). Based on the evidence provided by the parties, there is no genuine issue of material fact regarding whether Defendant Pacheco intentionally and purposefully discriminated against Plaintiff because of his religious beliefs. Accordingly, the Court recommends that summary judgement be entered in favor of Defendant Pacheco on Plaintiff's equal protection claim.

**B. Due Process**

Plaintiff contends that his constitutional right to procedural due process was violated when Defendant Pacheco "wrote a report and started a process that would take inmate Gibson off his religious meals" pursuant to the "two strikes" policy. *Compl.* [#29] at 6. Plaintiff alleges that he received no notice, and that he was not afforded a hearing "to check the validity of any thing accused of" before his Kosher diet was terminated. *Id.* According to Plaintiff, this is significant, because he contends that he was not violating the terms of the Agreement on both occasions when he received a "strike." *Response* [#184] at 3. Here, Defendant Pacheco argues that Plaintiff has not alleged a protected liberty interest, or alternatively, that Plaintiff received sufficient process through CDOC's "two strikes" policy and grievance processes. *Motion* [#173] at 15-16.

Procedural due process protects the individual against "arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). To state a due process claim, a plaintiff must allege facts that satisfy two elements. *See Bartell v. Aurora Pub. Schs.*, 263 F.3d 1143, 1149 (10th Cir. 2001). First, he must show that he possesses a protected liberty interest. *See id.*; *Veile v. Martinson*, 258 F.3d 1180, 1184-85 (10th Cir. 2001). The liberty interest factor is a threshold issue. *Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994) (noting that without a liberty interest, "no particular process [is] constitutionally required"). Second, if the threshold issue is satisfied, he must show that he was not afforded the appropriate level of process. *See Bartell*, 263 F.3d at 1149.

The essence of Plaintiff's due process claim is that more process, such as notice and a hearing, should be required before an inmate is reported to have violated the terms

of the Agreement under the "two strikes" policy, and before a Religious Diet Non-Compliance Report is filed. *Compl.* [#29] at 6; *Response* [#184] at 1-3. Plaintiff avers that if he had received more process before his removal from the Kosher diet program, he could have demonstrated that he was not actually violating the terms of the Agreement. *Compl.* [#29] at 6; *Response* [#184] at 1-3. Accordingly, Plaintiff appears to be arguing that he has a protected liberty interest in remaining in the Kosher diet program while incarcerated. *See Compl.* [#29] at 6.

Liberty interests "are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state-law rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). For prisoners, a liberty interest is only found in a "restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . , nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Ramos v. Keller*, No. 09-cv-00824-WYD-KLM, 2010 WL 743666 at *6 (D. Colo. Mar. 2, 2010) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

Courts have consistently recognized that receiving a Kosher diet while incarcerated does not constitute a protected liberty interest sufficient to sustain a due process claim. *See Russell v. Wilkinson*, 79 F. App'x 175, 178 (6th Cir. 2003) (terminating the plaintiff's Kosher meals did not implicate a liberty interest because it "did not amount to atypical or significant hardship" and did not affect the duration of his sentence); *Rivers v. Hogan*, No.

-14-

CIV–10–913–R, 2011 WL 2746142, at *3 (W.D. Okla. Jun. 24, 2011) (holding that the plaintiff did not establish a protected liberty or property interest in a Kosher diet when his diet was temporarily revoked); *Dove v. Broome Cnty. Corr. Facility,* No. 9:10–CV–0002, 2011 WL 1118452, at *12 (N.D.N.Y. Feb. 17, 2011) ("While the provision of a Kosher diet may implicate free exercise concerns under the First Amendment and the RLUIPA, it does not rise to the level of a cognizable liberty interest giving rise to the procedural safeguards guaranteed under the Fourteenth Amendment."); *Rogers v. United States*, 696 F. Supp. 2d 472, 500-01 (D. Pa. 2010) (holding that the plaintiff did not have a liberty interest in receiving a halal meal while incarcerated). Plaintiff has therefore failed to establish the existence of a protected liberty interest. Because Plaintiff has not met his burden on this threshold issue, he cannot sustain a procedural due process claim. When no protected liberty interest is at issue, no particular constitutional process is required. *See Templeman*, 16 F.3d at 371. Accordingly, the Court recommends that summary judgment be entered on Plaintiff's procedural due process claim.

## C. First Amendment

Plaintiff alleges that Defendant Pacheco "wrote a report and started a process that would take inmate Gibson off his religious meals." *Compl.* [#29] at 6. According to Plaintiff, the revocation of his Kosher diet means that he "is denied the oppurtunity [sic] to practice his religion," implicating his First Amendment right to free exercise of religion. *Id.* In response, Defendant Pacheco argues that Plaintiff was not denied the right to eat Kosher food until he violated the "two strikes" policy contained in the Agreement, and that the "two strikes" policy has been approved by the Tenth Circuit as a permissible system to curb

abuse of the religious diet program. *Motion* [#173] at 9.

The Supreme Court has consistently recognized that prisoners do not forfeit their constitutional rights, including their First Amendment protections, as a consequence of their incarceration. *Beerheide v. Suthers*, 286 F.3d 1179, 1184 (10th Cir. 2002) (citing *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987); *Cruz v. Belato*, 405 U.S. 319, 322 (1972)). However, while "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution," *Turner v. Safley*, 482 U.S. 78, 84 (1987), the realities of incarceration and legitimate penological interests may necessarily result in a curtailment of an inmate's constitutional rights. *Beerheide*, 286 F.3d at 1184 (citing *O'Lone*, 482 U.S. at 348).

The Tenth Circuit has approved the use of certain CDOC restrictions on religious diets, to ensure the sincerity of inmates who participate in a religious diet program, as consistent with the Free Exercise Clause of the First Amendment. *See Beerheide,* 286 F.3d at 1190-91; (affirming *Beerheide v. Suthers*, 82 F. Supp. 2d 1190, 1198-99 (D. Colo. 2000)). In *Beerheide*, the plaintiff inmates challenged a CDOC regulation that required inmates to make a co-payment of ninety dollars each month in order to be eligible for the Kosher diet program. *Beerheide*, 82 F. Supp. 2d at 1193-94. If an inmate could not pay the fee, it became a debt in his inmate account and could be enforced after he was released from prison. *Id.* at 1196. CDOC asserted that the co-pay was a necessary restriction to ensure that only sincerely religious inmates participated in the program. *Id.* at 1198. The district court found that the co-payment violated the plaintiffs' First Amendment right to free exercise of religion, in part because other CDOC regulations on the receipt of a religious

diet were already in place and were efficiently restricting access to religious diets to those with sincerely-held beliefs. *Id.* at 1198-1200. Additionally, the district court found that CDOC's other regulations had already "[set] in place an effective method by which sincerity of an inmate's religious beliefs may be tested." *Id.* at 1198. In affirming the decision, the Tenth Circuit recognized that CDOC "has in place a well-established system that serves as a screen to keep out prisoners who seek to participate in the Kosher meal program without a legitimate reason." *Beerheide*, 286 F.3d at 1191.

The regulations at issue in *Beerheide* are not materially different from the regulations at issue here.[6] However in this case, a genuine issue of material fact exists as to whether CDOC employees at AVCF, including Defendant Pacheco, complied with CDOC's regulations governing religious diets when they removed Plaintiff from the religious diet program. As explained further below, this issue remains problematic for two reasons. First, there is a genuine issue of material fact related to the validity of Plaintiff's first "strike." Second, a genuine issue of material fact persists as to whether the oatmeal cream pie that Plaintiff was consuming at the time of his second "strike" actually is, or should be, classified as a Kosher food item.

Inmates retain the protection of their constitutional rights, including the protections

---

[6] The regulations at issue in *Beerheide* were contained in CDOC Administrative Regulation #1550-6. *Beerheide*, 82 F. Supp. 2d at 1198. The rules governing religious diets in this case are also contained in AR #1550-06. *Ex. A-1, Aff. of Ben* [#173-1] at 2. Although the wording of #1550-6 appears to have been altered since that case was decided in 2000, and the language used in the regulations at issue in *Beerheide* and this case differs slightly, the essence of the rules governing religious diets remains the same. *See Beerheide*, 82 F. Supp. 2d. at 1199; *Ex. A-1, Aff.of Ben* [#173-1] (Ex. 1 to Ex. A-1, CDOC Religious Diet Participation Agreement, dated June 18, 2006). In both cases, the regulations required an inmate to submit a Request for a Religious Diet form, disallowed the inmate from changing his religious affiliation more than once each year, and required the inmate to comply with certain restrictions related to the consumption of food prohibited by the religious diet. *See Beerheide*, 82 F. Supp. 2d at 1198-99; *Ex. A-1, Aff. of Ben* [#173-1] at 2, 3, 7 (Ex. 1 to Ex. A-1, CDOC Religious Diet Participation Agreement, dated June 18, 2006).

proscribed by the First Amendment, despite their incarceration. *See Turner*, 482 U.S. at 84. Although the Supreme Court has acknowledged that in some instances these constitutional rights must be conscribed as a result of the circumstances inherent to incarceration, courts still retain the "power to interpret and apply the Constitution within the prison context." *Beerheide*, 286 F.3d at 1184-85. The Tenth Circuit has firmly established that pursuant to an inmate's First Amendment right to free exercise of religion, prison facilities must allow sincerely religious  inmates to maintain a religious diet. *Beerheide*, 286 F.3d at 1185; *see also LaFevers v. Saffle*, 936 F.2d 1117, 1119-20 (10th Cir. 1991). Accordingly, if AVCF employees did not follow CDOC's internal regulations regarding religious diets and instead arbitrarily revoked the Kosher diet of a sincerely religious inmate, then the Court cannot find, as a matter of law, that no genuine issue of material fact exists on the issue of whether Plaintiff's First Amendment right to free exercise was violated in this case.

Defendant Pacheco asserts that the revocation of Plaintiff's Kosher meal privileges occurred only after Plaintiff had received two "strikes" for violating the Agreement twice in one year. *Ex. 1, Aff. of Ben* [#173-1]  at 4-5. However, the Court finds that based on the evidence presented by the parties, a reasonable jury could find that Plaintiff did not  violate the terms of the Agreement on September 23, 2008, the date on which Plaintiff received his first "strike." *Id.* at 9 (Ex. 2 to Ex. A-1, CDOC Religious Diet Non-Compliance Report, dated Sept. 23, 2008). In her Motion, Defendant Pacheco argues that during this incident, Plaintiff violated provisions C, D, and E of the Agreement. *Motion* [#173] at 5; *Ex. 1, Aff. of Ben* [#173-1] at 4. In summary, these three provisions "required that [Plaintiff] refrain from purchasing, possessing or consuming food items contrary to his Kosher diet." *Ex. 1, Aff.*

*of Ben* [#173-1] at 4. These provisions did not prohibit an inmate from taking food out of the dining area or concealing food items under clothing. *See id.* at 7 (Ex. 1 to Ex. A-1, CDOC Religious Diet Participation Agreement, dated June 18, 2006). Nonetheless, according to the Religious Diet Non-Compliance Report drafted at the time, Plaintiff incurred the first "strike" because he was "putting food into his shirt while eating at chow." *Id.* at 9 (Ex. 2 to Ex. A-1, CDOC Religious Diet Non-Compliance Report, dated Sept. 23, 2008). The report further states that the "[i]tems were wrapped in his diet meal tray." *Id.*

No additional explanation of the specific provision of the Agreement that Plaintiff is alleged to have violated is provided in the report itself. *See id.* Accordingly, it appears that Plaintiff received a "strike" for attempting to take a food item from his Kosher meal tray out of the dining hall. This is not a violation of provision C, D, or E of the Agreement, which merely govern the purchase, possession, or consumption of food that violates the inmate's religious dietary restrictions. *See id.* at 7 (Ex. 1 to Ex. A-1, CDOC Religious Diet Participation Agreement, dated June 18, 2006). In this case, Plaintiff would have to purchase, possess, or consume *non-Kosher* food in order to violate one of those provisions. Instead, the report seems to indicate that the food item at issue came from Plaintiff's Kosher meal. *See id.* at 9 (Ex. 2 to Ex. A-1, CDOC Religious Diet Non-Compliance Report, dated Sept. 23, 2008). Because Defendant Pacheco has not demonstrated that Plaintiff was actually eating a prohibited non-Kosher item, a genuine issue of material fact exists as to the validity of Plaintiff's first violation under the "two strikes" policy. Accordingly, the finder of fact must determine whether Defendant Pacheco complied with CDOC's policy governing religious diets when issuing the first strike against

him. If not, Plaintiff's First Amendment claim may be valid.

Additionally, a genuine issue of material fact remains as to whether the oatmeal cream pies that gave rise to the termination of Plaintiff's Kosher diet are, or should be, classified as a Kosher food item at AVCF. Plaintiff received his second "strike" on August 28, 2009. *Id.* at 4-5. On that day, a Correctional Officer claimed that he observed Plaintiff eating "cookies" with his Kosher meal. *Id.* at 12 (Ex. 3 to Ex. A-1, CDOC Religious Diet Non-Compliance Report, dated Aug. 28, 2009). The officer approached Defendant Pacheco to determine whether cookies were included in the Kosher meal that day. *Id.* When Defendant Pacheco confirmed that cookies were not served with the Kosher meal, she drafted the Religious Diet Non-Compliance Report that constituted Plaintiff's second "strike." *See id.* Plaintiff asserts that he was actually "eating oatmeal cream pie" which "is [and] has always been Kosher item." [sic] *Response* [#184] at 2.

Beyond this assertion, Plaintiff has provided evidence that the oatmeal cream pie was a Kosher item by attaching a canteen sheet for another CDOC correctional facility. *See id.* at 5 (Ex. 1, SCF Canteen Sheet, dated Nov. 20, 2008). This canteen sheet provides that oatmeal cream pies are Kosher at SCF. *Id.* Although Plaintiff has not provided direct evidence that the oatmeal cream pie that he was eating at the time of his second violation was indeed Kosher, he has demonstrated that the same item is deemed to be Kosher in at least *some* CDOC facilities. *See Response* [#184] at 5 (Ex. 1, SCF Canteen Sheet, dated Nov. 20, 2008). Because designation of foods as "Kosher" is a matter of compliance with religious doctrine instead of convenience to a particular penal institution, Plaintiff has demonstrated that a genuine issue of material fact exists regarding whether Plaintiff violated the policy by eating the "cookie." Although Defendant Pacheco asserts in the

Motion that Plaintiff was violating provisions C, D, and E of the Agreement, she has not provided conclusive evidence to demonstrate that Plaintiff was consuming a non-Kosher food item at the time Plaintiff received his second "strike." *See Motion* [#173] at 5. Again, a violation of these provisions requires that Plaintiff purchase, consume, or possess non-Kosher food. *See Ex. 1, Aff. of Ben* [#173-1]  at 7 (Ex. 1 to Ex. A-1, CDOC Religious Diet Participation Agreement, dated June 18, 2006).

Based on the evidence provided by the parties, the Court cannot find as a matter of law that Plaintiff was actually violating the Agreement by eating a non-Kosher food item at the time he received his second "strike." Defendant Pacheco has not met her burden to prove that no genuine issue of material fact exists on this issue, because she has not provided evidence to show that Plaintiff was indeed consuming non-Kosher food on that occasion. Furthermore,  Plaintiff has presented some evidence to support his contention that CDOC makes Kosher oatmeal cream pies available for inmates in at least some of their facilities. Therefore, a genuine issue of material fact exists as to whether the "cookie" or oatmeal cream pie Plaintiff consumed on August 28, 2009 is, or should be, considered a Kosher food item.

Despite his status as a CDOC inmate, Plaintiff retains his First Amendment right to free exercise of religion. *See Turner*, 482 U.S. at 84; *Beerheide*, 286 F.3d at 1185. This protection extends to, and confirms, Plaintiff's right to maintain a Kosher diet while incarcerated. *Beerheide*, 286 F.3d at 1185. The Tenth Circuit has upheld the use of certain restrictions governing religious diets. *See Beerheide*, 286 F.3d at 1191. However, the Court cannot find, as a matter of law, that the AVCF staff, including Defendant Pacheco, actually complied with the religious diet regulations when they revoked Plaintiff's Kosher meal

privileges. Accordingly, the Court finds that a genuine issue of material fact exists as to whether Plaintiff's First Amendment right to free exercise was violated, and recommends that Defendant Pacheco's motion for summary judgment be denied on this issue.

**D. RLUIPA**

Finally, Defendant Pacheco moves for summary judgment on Plaintiff's RLUIPA claim. RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability," unless the government demonstrates that the burden furthers a "compelling governmental interest," and does so by "the least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)-(2). "RLUIPA thus protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005). The Court must construe RLUIPA "in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of [the statute] and the Constitution." 42 U.S.C. § 2000cc-3(g). The "'exercise of religion' often involves not only belief and profession but the performance of . . . physical acts [such as] assembling with others for a worship service [or] participating in sacramental use of bread and wine." *Cutter*, 544 U.S. at 721 (quoting *Emp't Div. Dep't of Human Res. of Ore. v. Smith*, 494 U.S. 872, 877 (1990)); 42 U.S.C. § 2000cc-5(7)(A) ("religious exercise" includes "any exercise of religion**,** whether or not compelled by, or central to, a system of religious belief"). Furthermore, certain religious exercises may involve dietary restrictions, as "[r]eligions often prescribe or prohibit the eating of certain foods and the drinking of certain liquids on particular days or during particular times." *United States v. Meyers*, 95 F.3d

1475, 1483 (10th Cir. 1996).

Because RLUIPA requires a state government to affirmatively permit and accommodate religious exercise by incarcerated persons, the government's burden when defending against a prisoner's RLUIPA claim is more onerous than its burden when defending against a prisoner's constitutional claim. *See Jotunbane v. Sedillo*, No. CIV 06-809 JB/RHS, 2010 WL 1781922, at *5 (D.N.M. Apr. 20, 2010) (unpublished decision). Therefore, a prisoner plaintiff should, in theory, survive motions to dismiss and motions for summary judgment significantly more often when proceeding under RLUIPA. *Id.; see, e.g.*, *Abdulhaseeb*, 600 F.3d at 1316-17 (finding that a prisoner presented a genuine issue of material fact as to whether the denial of his requests for an Islamic diet burdened his religious exercise); *Rowe v. Davis*, 373 F. Supp. 2d 822, 827 (N.D. Ind. 2005) (finding that a prisoner's complaint that a prison official prevented him from meeting with a religious leader was sufficient to survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss).

To survive a motion for summary judgment, a plaintiff must provide evidence of the following three elements: (1) that the plaintiff wishes to engage in a religious exercise; (2) that this wish is motivated by a sincerely-held belief; and (3) that the exercise is subject to a substantial burden imposed by the government. *See Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1312 (10th Cir. 2010).

Plaintiff is challenging the validity of the restrictions placed on inmates receiving religious diets through the Agreement and "two strikes" policy in light of RLUIPA's protection of the religious exercises of incarcerated persons. *Compl.* [#29] at 4, 6. Defendant Pacheco does not contest Plaintiff's ability to meet the first element of his RLUIPA claim, by admitting that Plaintiff "can demonstrate [that] he wishes to engage in

a religious exercise (eating a Kosher diet)." *Motion* [#173] at 13. However, Defendant

Pacheco contends that Plaintiff cannot meet his burden to demonstrate that (1) this wish

is motivated by a sincerely-held belief; and (2) Plaintiff's exercise is subject to a substantial

burden imposed by CDOC's "two strikes" policy. *Id.* at 13-14.

### 1. Sincerity of Plaintiff's Beliefs

First, the court must determine if there is a genuine issue of material fact with

respect to whether Plaintiff's religious exercise is motivated by a sincerely-held belief.  "In

assessing this burden, courts must not judge the significance of the particular belief or

practice in question. RLUIPA bars inquiry into whether [the] belief or practice is 'central' to

a prisoner's religion. RLUIPA does not, however, preclude inquiry into the sincerity of a

prisoner's professed religiosity." *Abdulhasseb*, 600 F.3d at 1314 n.6 (10th Cir. 2010) (citing

*Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006) (quotations and citations omitted)).

In support of the contention that Plaintiff's desire to continue to receive a religious

diet is not motivated by a sincerely held belief, Defendant Pacheco makes two arguments.

First, Defendant Pacheco cites Plaintiff's alleged consumption of non-Kosher food as

evidence that Plaintiff is not sincere in his Jewish beliefs.[7] *Motion* [#173] at 13; *Ex. 1, Aff.*

*of Ben* [#173-1] at 9 (Ex. 2 to Ex. A-1, CDOC Religious Diet Non-Compliance Report, dated

Sept. 23, 2008), 12 (Ex. 3 to Ex. A-1, CDOC Religious Diet Non-Compliance Report, dated

Aug. 28, 2009). Second, Defendant Pacheco asserts that Plaintiff's failure to properly

reapply for a Kosher diet after his year-long suspension from the program further

demonstrates a lack of sincerity. *Motion* [#173] at 14; *Ex. 1, Aff. of Ben* [#173-1] at 15 (Ex.

---

[7] Defendant Pacheco points only to the two instances documented by Religious Diet Non-Compliance reports, and does not provide evidence of any additional instances in which Plaintiff allegedly consumed non-Kosher food. *Motion* [#173] at 13.

4 to Ex. A-1, CDOC Request for Religious Diet, dated Sept. 14, 2010).

In response, Plaintiff argues that he did not actually violate the terms of the Agreement, because he did not consume non-Kosher food. First, he asserts that he was eating an item wrapped in his Kosher meal tray at the time of his first "strike." *Response* [#184] at 2. Additionally, Plaintiff maintains that the cookie he was eating at the time of his second violation was actually a Kosher item.[8] *Id.* at 3. Beyond these assertions, Plaintiff has not provided any evidence to support the second element of his RLUIPA claim and establish the sincerity of his religious beliefs.

However, evaluating the sincerity of a plaintiff's religious beliefs is "almost exclusively a credibility assessment." *Snyder v. Murray City Corp.*, 124 F.3d 1349, 1353-54 (10th Cir. 1997) (noting that the sincerity of a plaintiff's purported beliefs "can rarely be determined on summary judgment"). In light of the minimal evidence presented, Defendant Pacheco has not established the absence of a genuine issue of material fact on the issue of whether Plaintiff is motivated by sincerely-held religious beliefs. Based on the evidence before it, the Court cannot find that, as a matter of law, Plaintiff's religious beliefs are not sincere.  Accordingly, the Court finds that Defendant Pacheco has not met her burden of showing that there is no genuine issue of material fact on this element of Plaintiff's RLUIPA claim.

### 2. Substantial Burden

The Court next considers the third element of Plaintiff's RLUIPA claim, i.e., whether Plaintiff's exercise of Judaism is subject to a substantial burden.  While it is clear that

---

[8] As indicated supra, Plaintiff's evidence to support this contention consists of documentation from another prison facility that oatmeal cream pies are a Kosher canteen item. *Response* [#184] at 5 (Ex. 1, SCF Canteen Sheet, dated Nov. 20, 2008).

RLUIPA's protection extends beyond practices that are central to a religion, 42 U.S.C. § 2000cc-5(7)(A), it is equally clear that not every infringement on religious exercise will constitute a substantial burden. *Abdulhaseeb*, 600 F.3d at 1316. "The practice burdened need not be central to the adherent's belief system, but the adherent must have an honest belief that the practice is *important* to his free exercise of religion." *Id.* (emphasis added) (citing *Sossamon v. Lone Star State of Texas,* 560 F.3d 316, 332 (5th Cir. 2009)). In short, a burden on religious exercise is "substantial" under RLUIPA if it denies a plaintiff "reasonable opportunities" to engage in such exercise. *Caruso v. Zenon*, No. 95-MK-1578, 2005 WL 5957978, at *17 (D. Colo. July 25, 2005) (unpublished decision); *see also Smith v. Allen,* 502 F.3d 1255, 1278 (11th Cir. 2007) ("[A]t a minimum the substantial burden test requires that a RLUIPA plaintiff demonstrate that the government's denial of a particular religious . . . observance was more than an inconvenience to one's religious practice.").

The Court of Appeals for the Tenth Circuit has provided several examples of when a burden on religious exercise becomes "substantial." In *Abdulhaseeb*, the Circuit held that the government imposes a "substantial burden" on a prisoner within the meaning of RLUIPA when it does any of the following: (1) requires participation in an activity prohibited by a sincerely-held religious belief; (2) prevents participation in conduct motivated by a sincerely-held religious belief; or (3) places substantial pressure on the prisoner to not engage in conduct motivated by his sincerely-held religious belief or to engage in conduct contrary to his sincerely-held religious belief (e.g., where the government presents the prisoner with an illusory choice where the only realistically possible course of action tramples on his sincerely-held religious belief). 600 F.3d at 1315; 42 U.S.C. § 2000-1(a).

If the Court determines that a substantial burden has been placed on a plaintiff's

religious exercise, the inquiry is not complete. RLUIPA provides that the substantial burden on a plaintiff's religious exercise is permissible only if the defendants can show that the "imposition of the burden on [the plaintiff] (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(b)(1); *Abdulhaseeb*, 600 F.3d at 1312.

Defendant Pacheco contends that the terms of the Agreement and "two strikes" policy do not impose a substantial burden on the exercise of religion. *Motion* [#173] at 14. Instead, the policy  "actually assists inmates in engaging in their religion," because it requires adherence to the tenets of the inmate's religious dietary beliefs. *Id.* Beyond his general assertion that the revocation of his Kosher diet interferes with his ability to practice Judaism, Plaintiff has not provided evidence to demonstrate that the "two strikes" policy is a substantial burden. *See Compl.* [#29] at 6.

Based on the competent evidence provided by the parties, and viewing this issue in a light most favorable to Plaintiff, the Court finds that there is no genuine issue of material fact regarding whether the "two strikes" policy creates a substantial burden on Plaintiff's religious exercise. It is clear that Plaintiff was prohibited from receiving a Kosher diet for a period of one year. *Ex. A-1, Aff. of Ben* [#173-1] at 12 (Ex. 3 to Ex. A-1, CDOC Religious Diet Non-Compliance Report, dated Aug. 28, 2009). Yet it is also clear that, prior to his alleged violations of the "two strikes" policy, Plaintiff applied  for, and received a Kosher diet for at least three years. *Id.* at 7 (Ex. 1 to Ex. A-1, CDOC Religious Diet Participation Agreement, dated June 18, 2006). It was only after he allegedly violated the Agreement, designed to ensure that inmates receiving religious diets refrain from eating food prohibited by their religious dietary beliefs, that Plaintiff was denied the ability to eat

Kosher meals. *See Ex. A-2, CDOC Administrative Regulation #1550-06* [#173-2] at 1; *Ex. A-1, Aff. of Ben* [#173-1] at 12 (Ex. 3 to Ex. A-1, CDOC Religious Diet Non-Compliance Report, dated Aug. 28, 2009).

Accordingly, Plaintiff has not established that the Agreement and "two strikes" policy constitute a "substantial burden." First, Plaintiff has failed to carried his burden of demonstrating that the Agreement requires participation in an activity prohibited by a sincerely-held religious belief. On the contrary, the Agreement and "two strikes" policy actually require the inmate to commit to, and refuse to waiver from, conduct motivated by sincerely-held religious dietary beliefs. Plaintiff has also failed to show that the "two strikes" policy prevents participation in conduct motivated by a sincerely-held religious belief, again because the "two strikes" policy actually requires an inmate to abide by the dietary restrictions imposed by his religion. Finally, Plaintiff has not demonstrated that the "two strikes" policy places substantial pressure on the prisoner to not engage in conduct motivated by his sincerely-held religious belief or to engage in conduct contrary to his sincerely-held religious belief. *See Abdulhaseeb*, 600 F.3d at 1315; 42 U.S.C. § 2000-1(a). Instead, the policy places pressure on the inmate to conform to a diet motivated by a sincerely-held religious belief at the risk of losing his religious diet privileges. Although an inmate may be a denied a religious diet pursuant to the "two strikes" policy, it is only after the inmate has strayed from the requirements of his religious diet *twice* that his diet is revoked.

The lack of a genuine issue of material fact regarding whether CDOC's two-strikes policy substantially burdens the exercise of Plaintiff's religion defeats his RLUIPA claim. Accordingly, the Court recommends that summary judgement be entered in favor of

Defendant Pacheco on Plaintiff's RLUIPA claim.

## V.  Conclusion

For the foregoing reasons, the Court respectfully **RECOMMENDS** that Defendant

Pacheco's **Motion for Summary Judgment** [#173] be **GRANTED in part and DENIED**

**in part**, and that summary judgment be entered in favor of Defendant Pacheco on Plaintiff's

equal protection, due process, and RLUIPA claims only.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have

fourteen (14) days after service of this Recommendation to serve and file any written

objections in order to obtain reconsideration by the District Judge to whom this case is

assigned.  A party's failure to serve and file specific, written objections waives de novo

review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*,

474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal

questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v.*

*Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).   A party's objections to this

Recommendation must be both timely and specific to preserve an issue for de novo review

by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73

F.3d 1057, 1060 (10th Cir. 1996).

Dated:  March 14, 2012

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge

-29-